**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3873-16T3
              A-3919-16T3

FLEMINGTON FIELDS
CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiff-Appellant,

v.

FLEMINGTON FIELDS
HOMEOWNERS ASSOCIATION,
INC.,

      Defendant-Respondent.

_____

FLEMINGTON FIELDS
CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiff-Respondent,

v.

FLEMINGTON FIELDS
HOMEOWNERS  ASSOCIATION,
INC.,

      Defendant-Appellant.

_____

Argued October 15, 2018 – Decided November 30, 2018

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0163-15.

Donald F. Scholl, Jr., argued the cause for appellant in A-3873-16 and respondent in A-3919-16 (Scholl, Whittlesey & Gruenberg, LLC, attorneys; Donald F. Scholl, Jr., on the briefs).

Timothy P. Burns argued the cause for appellant in A-3919-16 and respondent in A-3873-16 (Robinson Burns, LLC, attorneys; Timothy P. Burns, of counsel and on the briefs; Colin R. Gibson, on the briefs).

PER CURIAM

These two appeals, calendared back-to-back and consolidated for purposes of this opinion, arise out of a complaint filed by plaintiff Flemington Fields Condominium Association (COA) against defendant Flemington Fields Homeowners Association (HOA), seeking past and prospective payments from the HOA for certain amenities shared by both associations in their common development, and counsel fees and costs. The HOA appeals from a summary judgment order obligating it to contribute financially to the storm water management basin (basin or pond), and a post-trial judgment establishing the percentage of HOA's contribution, while COA appeals from an order denying

its application for fees and costs. For the reasons that follow, we affirm the Law Division orders.

## I.

We derive the factual background and procedural history from the record on appeal. Located in Raritan Township, Flemington Fields is an age-restricted residential development, which is divided into 142 condominium units and 86 single-family homes. The COA governs the condominium units; the HOA governs the single-family homes.

The crux of this appeal implicates the common elements located in an area of the development containing the condominium units. Those elements were constructed by Raritan Valley Developers, Inc. During the timeframe in which the developer held a majority presence on the boards of each association, both entities contributed to the operation and maintenance of the pond and other elements. Pursuant to the Public Offering Statement (POS), drafted by the developer, the HOA's contribution toward the pond was allocated at thirty-eight percent, based on the ratio of the number of HOA units to the total combined units within the development. In 2014, when the developer transitioned control to each association, the HOA ceased making payments. However, HOA owners

continued to use the clubhouse until the COA barred them from doing so in 2016.

In the interim, the COA filed its complaint. Following a period of discovery, the COA moved for partial summary judgment as to liability and damages, and the HOA cross-moved for summary judgment to dismiss count four of the COA's complaint, which sought counsel fees and costs.

On September 1, 2016, the trial judge granted the COA's motion in part, limited to the COA's obligation to contribute to the operating and maintenance expenses of the pond. In rendering his decision, the trial judge observed the pond "was constructed as part of the initial planning and design of this combined community[.]" The judge elaborated:

> [I]t [i]s undeniable that the [HOA] and [its] individual members, the individual property owners are beneficiaries of the storm water management system. Their storm water undisputably, a large percentage of it, runs off through piping and drainage designs . . . into the pond apparently that [is] located on the [COA]'s property.

> So, there is no way to undo it. There is no way to deny that the [HOA] homeowners enjoy the benefits of the storm water management system[.]

To support his decision, the judge cited the Declaration, which "the [HOA] acknowledge[d] is a document that [it is] bound by." Pursuant to the

terms of the Declaration, "common property" includes "any easement or other right which may now or hereafter be granted for the benefit of the Owners for access to or use of property (or for any other purpose) not included within the Development[.]"

However, the judge denied COA's motion pertaining to the HOA's obligation to contribute toward other shared amenities, including the gazebo, clubhouse, lawn maintenance and snow removal; and the HOA's percentage of allocation for future fees. The judge also denied, without prejudice, the HOA's cross-motion pertaining to fees and costs.

On February 16, 2017, the trial judge denied, with prejudice, the COA's motion for counsel fees and professional fees.[1] The judge observed that, generally, a prevailing litigant is not entitled to counsel fees except where fee shifting is authorized by contract or statute. The judge then rejected the COA's argument that the underlying intent of the governing documents and the Condominium Act, N.J.S.A. 46:8B-1 to -38 (Act), supported the fee award sought by the COA in this litigation.

---

[1] During oral argument before us, the COA conceded there exists no legal support for the COA's claimed professional fees, i.e., costs associated with hiring the accountant and engineer who testified on behalf of the COA at trial.

A non-jury trial was held on two consecutive days in March 2017. The COA presented testimony of three witnesses, including its engineering expert, Thomas R. Decker, P.E., while no witnesses testified on behalf of the HOA. On April 7, 2017, the judge awarded the COA damages in the amount of $29,580.15 "for arrears for certain amenities that . . . [d]efendant has received the beneficial use of, up and through the trial date of March 8, 2017." The judge further ordered the HOA to pay forty-one percent "of all the [future] expenses, including in particular, operating expenses, deferred maintenance and capital reserve costs for the [pond][.]" These appeals followed.

Initially, the HOA appeals, in part, from the September 1, 2016 order granting partial summary judgment to the COA. The HOA primarily contends its governing documents are silent as to the basin and do not obligate the HOA to contribute financially to the basin's maintenance and repair. As such, the HOA maintains the judge erred in determining the HOA benefitted from an implied easement for the pond, and other amenities, including the gazebo, clubhouse and parking area.[2]

---

[2] Because the trial judge did not grant summary judgment with respect to contribution toward those other amenities, we decline to consider that aspect of HOA's argument in our opinion.

Secondly, the HOA also appeals from that portion of the April 7, 2017 judgment fixing its percentage contribution for prospective payments at forty-one percent. The HOA argues the judge improperly permitted evidence from Decker regarding his formula for contribution, which differed from the thirty-eight percent figure that was utilized before the respective boards assumed control of the development.

In its appeal, the COA contends the trial judge erred in denying its application for counsel fees and professional fees because the Act and the relevant governing documents authorize recovery of fees in an enforcement action for unpaid assessments. The COA also argues it is a third-party beneficiary of the governing documents that authorize the recovery of counsel fees.

## II.

## A.

We first consider the HOA's argument that the judge erred in granting partial summary judgment. "[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Thus, we consider "whether the competent evidential materials

presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

"If there is no genuine issue of material fact, we must then decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (internal quotation marks and citation omitted). We accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Guided by these principles, we conclude that summary judgment was properly granted.

Specifically, New Jersey adheres to the general rule that "[t]he beneficiary of an easement . . . has a duty to the holder of the servient estate to repair and maintain the portions of the servient estate and the improvements used in the enjoyment of the servitude[.]" Lake Lookover Prop. Owner's Ass'n v. Olsen, 348 N.J. Super. 53, 67 (App. Div. 2002) (quoting Restatement (Third) of Prop.: Servitudes § 4.13 (Am. Law Inst. 2000)). In that case, the owners of property surrounding an artificially constructed lake appealed from an order requiring

similarly situated property owners to contribute to the cost of repairing and reconstructing a dam on the lake. Id. at 54. The defendants' lakeside lots were created when the developers constructed the dam in question, which in turn, created the lake. Id. at 54-55. The court held "the several property owners hold 'separate easements' in the same servient estate (Lake Lookover) and thus have a duty to each other to contribute to the cost of repairs and maintenance that are required to preserve that lake." Id. at 67.

Further, it is well-settled that a "quasi-easement" may be created by implication. Leach v. Anderl, 218 N.J. Super. 18, 24-25 (App. Div. 1987). A quasi-easement is established by "the apparent use of the quasi-servient portion of the estate for the quasi-dominant portion, the continuous nature of the use, the permanent character of the quasi-easement, and its reasonable necessity to the beneficial enjoyment of the dominant portion." Id. at 26 (citation omitted). The continuous and permanent nature of an implied easement refers to both "the continuity of enjoyment . . . as well [as] the permanence of the quasi-easement in its impliedly intended adaptation to the dominant and servient tenements." A.J. & J.O. Pilar, Inc. v. Lister Corp., 38 N.J. Super. 488, 498 (App. Div. 1956), aff'd, 22 N.J. 75 (1956) (noting that a "hidden pipe or drain may . . . be deemed an apparent [use]"). Additionally, the easement need only be "reasonably

necessary to the proper enjoyment of the dominant tenement . . . not absolutely necessary." Ibid.

Having considered the HOA's arguments in light of the record and controlling legal principles, we affirm, substantially for the reasons expressed in the judge's cogent oral opinion. The HOA's arguments are without sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

In addition to the definition of "common property," the Declaration also provides: "Regardless of whether title to the Common Property . . . is held by . . . the [HOA], the [HOA] shall, at all times, have the duty, responsibility and obligation to undertake any and all efforts necessary to administer, operate, maintain, repair and replace the Common Property . . . ." Thus, read as a whole, the governing documents support the trial judge's determination that an implied easement was created from the benefits derived by the HOA members whose storm water "runs off through piping and drainage designs . . . into the pond" situated on the COA's property.

In sum, the judge aptly recognized the creation of an implied easement "at a minimum" is "a simple matter of common sense and logic." His decision is fully supported by the case law. In particular, the HOA benefitted from an

implied easement, the use of which was continuous, permanent, and reasonably necessary to the HOA's use of its property. Leach, 218 N.J. Super. at 26. Because the HOA derived a benefit from the storm water management system, it is obligated to contribute toward the pond's maintenance and related expenses.

B.

We next address the HOA's argument that the trial judge erred in permitting the COA to present evidence reallocating the HOA's percentage. The HOA contends the COA was judicially estopped from presenting evidence at trial that the percentage of prospective assessments should be calculated at a forty-one percent contribution, as determined by Decker. Instead, the HOA claims the COA is bound by the thirty-eight percent formula, set forth in the POS. The HOA's argument is unavailing.

We have recognized that in order to protect the integrity of the court system, "[w]hen a party successfully asserts a position in a prior legal proceeding, that party cannot assert a contrary position in subsequent litigation arising out of the same events." Kress v. LaVilla, 335 N.J. Super. 400, 412 (App. Div. 2000). The doctrine of judicial estoppel may bar a claim if: (1) a party currently advocates a position contrary to a position it previously advocated; (2) the party successfully convinced the court to accept its prior

position; and (3) the party's inconsistent behavior will result in a miscarriage of justice. Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606-08 (App. Div. 2000).

Here, the trial judge accepted the COA's position regarding the thirty-eight percent formula for the HOA's arrears because "both boards essentially agreed with . . . the formula that the developer had initially proposed." Accordingly, the judge determined the parties were bound by the thirty-eight percent formula "[until] the respective boards took over control of the development." Thereafter, however, the parties "were entitled to disagree [about the percentage formula] once they had control."

In reaching his decision, the trial judge cited a provision of the Act and case law that prohibits developers from entering into long-term management contracts. See N.J.S.A. 46:8B-12.2 (providing that certain management contracts shall not exceed two years in duration); Brandon Farms Prop. Owners Ass'n v. Brandon Farms Condo. Ass'n, 180 N.J 361, 373 (2004) (holding that a condominium association properly refused to enforce a management agreement created by the developer before the association came into existence). Accordingly, the judge determined, "The POS is an expired document that is not binding on the HOA . . . forever." Thus, the judge found the COA was within

its rights to "seek a judicial declaration in the absence of an agreement between the two boards for a determination of the [HOA]'s [prospective] percentage responsibility for storm water management costs."

Moreover, the record fully supports the judge's findings. In arriving at the forty-one percent allocation, the judge determined, "Decker's formula is a more reasonable, more accurate basis for allocating the storm water management expenses." In doing so, the judge found Decker credible observing, "His opinion was based on sound engineering and mathematical principles." Notably, the HOA's expert, who did not testify, did not disagree with Decker's methodology.

For the foregoing reasons, we decline to apply the doctrine of judicial estoppel here, where the "prior position" was not exclusively that of the COA, but rather the prior percentage formula was contained in the POS, which applied to both boards. See Kimball Int'l, Inc., 334 N.J. Super. at 606-08. Because the judge's determination regarding the HOA's percentage share of prospective contribution is supported by substantial, credible evidence in the record, we decline to disturb it. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (according deference to the trial judge's findings, as long as they are supported by substantial credible evidence).

# III.

Lastly, we turn to the COA's appeal from the order denying its request for counsel fees. The COA maintains a fee award is warranted by court rule, the Act and its governing documents. We disagree.

It is well-settled that "New Jersey disfavors the shifting of attorneys' fees." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (citing N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999)). For this reason, New Jersey has long-adhered to the American Rule, "which provides that litigants must bear the cost of their own attorneys' fees." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). Our Supreme Court has recognized "[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." Ibid. (alteration in original) (quoting In re Niles, 176 N.J. 282, 294 (2003)). Reflecting this state's strong public policy against shifting of counsel fees, Rule 4:42-9 creates the presumption that "[n]o fee for legal services shall be allowed[,]" except in certain enumerated circumstances, such as by statute or court rule. Id. at 592-93 (first alteration in original).

A-3873-16T3

Initially, we note the Act provides for fee-shifting under certain circumstances:

> a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees[.]
>
> [N.J.S.A. 46:8B-21.]

The COA acknowledges that its action does not pertain to the filing of a lien, nor an individual unit owner within the association, but nevertheless contends that the statute, when read as a whole, encompasses a homeowners' association within its definition of "unit owner." Because an association is both a "person" and a "representative body of its unit owners," the COA argues it is entitled to counsel fees incurred to recover the unpaid assessments from the HOA. Further, the COA contends that had it sued to recover such expenses in an enforcement action against one of its unit owners, it would have been able to recover counsel fees. Accordingly, the COA argues it should be permitted to recover in an enforcement proceeding against its sister association.

The COA's argument is misplaced. As the trial judge correctly found, "[t]he statute does [not] clearly apply to this particular circumstance." The

15

COA's overly expansive interpretation runs contrary to the underlying intent of the statute because the COA is not a "unit owner," which is defined as "the person or persons owning a unit in fee simple." N.J.S.A. 46:8B-3(q). The statute also defines "association" as "the entity responsible for the administration of a condominium, which entity may be incorporated or unincorporated." N.J.S.A. 46:8B-3(b). Further, the statute defines "unit" as "a part of the condominium property designed or intended for any type of independent use[.]" N.J.S.A. 46:8B-3(o). Clearly, in defining each term, the legislature intended to distinguish an association from its unit owners.

Moreover, when interpreting statutes, courts must follow well-established rules of construction. "The goal of all statutory interpretation 'is to give effect to the intent of the Legislature.'" Maeker v. Ross, 219 N.J. 565, 575 (2014) (quoting Aronberg v. Tolbert, 207 N.J. 587, 597 (2011)). A court "first look[s] to the statutory language, which generally is the 'best indicator' of the Legislature's intent." Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Extrinsic sources, such as legislative history are considered "[o]nly if the language of the statute is shrouded in ambiguity or silence, and yields more than one plausible interpretation . . . ." Ibid. Further, when interpreting a statute where "the Legislature has clearly defined a term, the courts are bound by that

definition." Febbi v. Bd. of Review, Div. of Emp't Sec., Dep't of Labor & Indus., 35 N.J. 601, 606 (1961). Finally, a court considers "not only the particular statute in question, but . . . the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987).

Here, prior to adopting N.J.S.A. 46:8B-21, the Senate reasoned:

> This bill would provide statutory authority for provisions found in condominium association master deeds and by-laws that allow for the imposition of reasonable fines on unit owners who fail to comply with the master deed, by-laws, or rules and regulations of the condominium. The bill also specifically indicates that condominium associations may include provisions in their master deeds or by-laws for the imposition of late fees upon unit owners who fail to pay monies duly owed the association after proper notice.
>
> [S. Comm. Statement to A.B. 465 (May 2, 1996) (emphasis added).]

Although we do not find the statute ambiguous, the legislative history underscores the statutory intent to afford a condominium association a mechanism to enforce its rules and regulations against non-compliant unit owners. To the extent the association incurs counsel fees in connection with such enforcement measures, counsel fees may be assessed against offending unit owners. There is no indication, however, that the legislature intended to extend

17

this enforcement mechanism to an action brought by one association against another.

We therefore agree with the trial judge and decline to "extend the intent of the condominium statute" to the COA's claim for fees against the HOA. See State v. Perry, 439 N.J. Super. 514, 523 (App. Div. 2015) (recognizing a court should interpret a statute according to "its ordinary meaning and construe it in a common-sense manner").

Secondly, although Rule 4:42-9 does not include contracts within its eight exceptions under which attorneys' fees may be awarded, the rule does not preclude parties from agreeing to fee-shifting provisions, and a party may be contractually obligated to pay counsel fees. Satellite Gateway Commc'ns, Inc. v. Musi Dining Car Co., 110 N.J. 280, 285-86 (1988). When fee-shifting is prescribed by contract, "the [relevant] provision should be strictly construed in light of [the] general policy disfavoring the award of attorneys' fees." Litton, 200 N.J. at 385 (citing N. Bergen, 158 N.J. at 570).

Relevant here, Article VI of the Declaration provides, in pertinent part:

> Each assessment and all fines and other charges assessed against a Lot or its Owner shall be deemed a continuing lien upon the Lot against which they were assessed or the Lot owned by the Owner against whom they were assessed and shall also be the joint and several personal obligation of the Owner(s) of such Lot

at the time when the assessment, fine or other charge fell due and of each subsequent record Owner of such Lot, together with such interest thereon and the cost of collection thereof (including reasonable attorney[s'] fees). Liens for unpaid assessments, fines or other charges may be foreclosed by suit brought in the name of the [HOA] in the same manner as a foreclosure of a mortgage on real property.

[(Emphasis added).]

In considering the application of those governing documents, the trial judge aptly recognized that they "do [not] really control this type of a situation." The judge reasoned, "There was nothing that put the [HOA] on notice that [it was] going to be responsible for counsel fees if [it] failed to prevail in this litigation." (Emphasis added). Although the HOA unit owners were on notice that attorneys' fees could be imposed in a legal action to recover delinquencies on assessments, that provision did not provide notice that the individual owner could be liable for counsel fees in the present case.

Having reviewed the arguments raised by the COA in light of the record on appeal and applicable law, we conclude that the judge did not abuse his discretion in denying the COA's application for counsel fees and costs. See Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., Div. of Pensions & Benefits, 455 N.J. Super. 357, 362 (App. Div. 2018). We therefore find no basis to disturb the judge's findings.

To the extent not addressed, the COA's remaining points lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3873-16T3